**THE DUGGER LAW FIRM, PLLC**
**Cyrus E. Dugger**
**154 Grand St.**
**New York, New York 10013**
**Tel: (646) 560-3208**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMES OEHLER, individually and on behalf of all others similarly situated, | **Case No.** |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT** |
| ST. HILDA'S & ST. HUGH'S SCHOOL, VIRGINIA CONNOR, PETER GANZENMULLER, and AUSTIN & CO., INC., | **Demand for Trial by Jury** |
| Defendants. | |

Plaintiff James Oehler ("Plaintiff"), by his attorney, Cyrus E. Dugger, The Dugger Law Firm, PLLC, makes the following individual and class action allegations against Defendants St. Hilda's & St. Hugh's School ("the School"), Head of School Virginia Connor ("Connor"), Director of Finance and Operations Peter Ganzenmuller ("Ganzenmuller") (collectively the "School Defendants"), and Austin & Co., Inc. ("Austin & Co.") (collectively "Defendants").

## <u>INTRODUCTION</u>

1.      Founded in 1950, the School describes itself as an independent, episcopal school for boys and girls from age two through the eighth grade.

2.      Plaintiff worked as a Greenhouse Keeper at the School from approximately July 2013 until February 7, 2018, when Head of School Connor terminated his employment.

3.      Head of School Connor describes the School's faculty as "an extended family."

4.      The School's rhetoric, however, was not matched by its treatment of its FMLA-eligible employees, FMLA-eligible male employees, and/or FMLA-eligible male caregiver employees.

5.      Plaintiff brings this action pursuant to the Family and Medical Leave Act, 29 U.S.C. §§ 2601 *et seq.* ("FMLA"), on behalf of all similarly situated FMLA-eligible employees of the School, as a declaratory and injunctive relief class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (c)(4), challenging the School's class-wide interference with FMLA rights, arising from its failure to provide the written FMLA statutory rights and responsibilities notice required by 29 C.F.R. § 825.300(c) and the written FMLA designation notice required by 29 C.F.R. § 825.300(d).

6.      Plaintiff additionally brings this action, in his individual capacity, pursuant to the FMLA, the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), the New York State Human Rights Law, New York Executive Law, Art. 15 §§ 290 *et seq.* ("NYSHRL"), and the New York City Human Rights Law, New York City Admin. Code §§ 8-101 *et seq.* ("NYCHRL").  Plaintiff alleges individual claims of: (1) interference in violation of the FMLA, including from the failure to provide the written FMLA notices required by 29 C.F.R. § 825.300(c) and 29 C.F.R. § 825.300(d); (2) retaliation in violation of the FMLA; (3) gender discrimination, "gender plus" male caregiver discrimination, caregiver and/or male caregiver-based harassment and hostile work environment, relationship or association disability discrimination, aiding and abetting, retaliation, and interference in violation of the NYCHRL; and (4) sex discrimination, "sex plus" male caregiver discrimination, associational disability discrimination, and retaliation in violation of Title VII.

7.      The School Defendants violated the FMLA by interfering with Plaintiff's FMLA

rights, including by failing to provide the written FMLA notices required by 29 C.F.R. § 825.300(c) and 29 C.F.R. § 825.300(d).

8.     The School Defendants violated the FMLA by retaliating against Plaintiff for his requests for, use of, continuing need for, and/or eligibility for FMLA leave.

9.     The School Defendants discriminated against Plaintiff in violation of the NYCHRL, by withholding the written FMLA notices required by 29 C.F.R. § 825.300(c) and 29 C.F.R. § 825.300(d), because of (or in part because of) his gender, or alternatively, because of (or in part because of) a combination of his male gender and caregiver status.

10.     The School and Connor engaged in male caregiver sex stereotyping discrimination, male caregiver harassment, and created a male caregiver-based hostile work environment in violation of the NYCHRL.

11.     The School and Connor violated the NYCHRL by interfering with Plaintiff's NYCHRL rights, including by threatening him because of (or in part because of) his protected complaints and opposition and/or male caregiver status.

12.     The School Defendants and Austin & Co. aided, abetted, incited, compelled, and/or coerced the NYCHRL violations of each other described herein, and/or attempted to do so.

13.     Austin & Co. aided, abetted, incited, compelled, and/or coerced the NYSHRL violations of the School Defendants the underlying conduct of which is described herein, and/or attempted to do so.

14.     This action seeks, on behalf of Plaintiff, back pay (including lost wages, salary, employment benefits, and other compensation), reinstatement and/or front pay, emotional distress damages, liquidated damages, punitive damages, declaratory relief, injunctive relief,

statutory attorney's fees, expert fees, costs arising from Defendants' violations of the FMLA, Title VII, the NYSHRL, and/or the NYCHRL.

15.     This action also seeks on behalf of Plaintiff, and all similarly situated FMLA-eligible employees of the School, class-wide declaratory relief, class-wide injunctive relief, and attorney's fees and costs concerning the School's class-wide failure to provide the written FMLA notices required by 29 C.F.R. § 825.300(c) and 29 C.F.R. § 825.300(d), to the School's similarly situated FMLA-eligible employees, FMLA-eligible male employees, and/or FMLA-eligible male caregiver employees.

## JURISDICTION AND VENUE

16.     The Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331, 29 U.S.C. § 2617(a), and 28 U.S.C. § 1343.

17.     The Court has jurisdiction over Plaintiff's NYCHRL and NYSHRL claims pursuant to 28 U.S.C. § 1367.  Plaintiff's NYCHRL and NYSHRL claims are so closely related to Plaintiff's claims under the FMLA and Title VII, that they form part of the same case or controversy under Article III of the United States Constitution.Defendants are subject to personal jurisdiction in New York.

18.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims occurred within this judicial district.

19.     Venue is also proper pursuant to Title VII's special venue provision, 42 U.S.C. § 2000e-5(f)(3), because the Southern District of New York is the judicial district in which the unlawful employment practices alleged herein were committed.

20.     The Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§

2201-2202, 29 U.S.C. § 2617(b), 42 U.S.C. § 2000e-5(g), New York Executive Law, Art. 15 § 297(9), and New York City Admin. Code § 8-502.

21.    The Court is empowered to issue an injunction pursuant to 29 U.S.C. § 2617(b), 42 U.S.C. § 2000e-5(g), New York Executive Law, Art. 15 § 297(9), and NYCHRL § 8-502, New York City Admin. Code § 8-502.

## PARTIES

**Plaintiff James Oehler**

22.    Plaintiff is an adult individual who resides in the Bronx, New York.

23.    Plaintiff was a resident of New York City at all times during his employment with the School.

24.    The School Defendants employed and/or jointly employed Plaintiff as a Greenhouse Keeper from approximately July 2013 until February 7, 2018, when Connor terminated his employment.

25.    Plaintiff was at all times relevant a covered employee within the meaning of the FMLA.

26.    Plaintiff was at all times relevant a covered employee within the meaning of the NYCHRL.

At all times relevant, Plaintiff was FMLA-eligible under 29 U.S.C. § 2611(2) because he had been employed for twelve months and had worked at least 1,250 hours prior to each FMLA leave qualifying event, and was employed at the School's principal worksite and place of business at 619 West 114th St., New York, NY 10025, where the School employed more than fifty employees.

**Defendant St. Hilda's & St. Hugh's School**

27.     The School is a private upper west side school with classes for children from age two through the eighth grade, with its worksite and principal place of business at 619 West 114th St., New York, NY 10025.

28.     Upon information and belief the School employs approximately 99 faculty members.

29.     The School employed Plaintiff from approximately July 2013 until February 7, 2018.

30.     At all times during Plaintiff's employment with the School, the School had more than four employees and/or independent contractors in its employ.

31.     At all times during and, upon information and belief, after Plaintiff's employment with the School, the School employed more than fifty employees at its principal worksite and place of business at 619 West 114th St., New York, NY 10025.

32.     At all times during and, upon information and belief, after Plaintiff's employment with the School, the School was an employer and/or joint employer within the meaning of the FMLA.

33.     At all times during Plaintiff's employment with the School, the School was an employer and/or joint employer within the meaning of the NYCHRL.

**Defendant Head of School Virginia Connor**

34.     Upon information and belief, Connor is a resident of the State of New York.

35.     At all times during Plaintiff's employment with the School, Virginia Connor served as the Head of School.

36.     Upon information and belief, Connor has had the title of Head of School since

approximately 1993.

37.     Upon information and belief, Connor is the longest-serving female head of an ongoing school in New York City.

38.     At all times during Plaintiff's employment with the School, Connor supervised the School's faculty, including Plaintiff.

39.     At all times during Plaintiff's employment with the School Connor was an employer and/or joint employer within the meaning of the FMLA.

40.     At all times during Plaintiff's employment with the School, Connor was an employer and/or joint employer within the meaning of the NYCHRL.

41.     At all times during Plaintiff's employment with the School, Connor was a supervisor and/or manager within the meaning of the NYCHRL.

42.     Upon information and belief, Connor obtained an M.A. from Teachers College at Columbia University in 1993 and a B.S. from Wheelock College in 1981.

43.     Upon information and belief, Connor serves on the board of trustees for the Brearley School, the New York State Association of Independent Schools ("NYSAIS"), and the Independent Schools Admission Association of Greater New York ("ISAAGNY").

44.     At all times during Plaintiff's employment with the School, Connor exercised supervisory authority over Plaintiff and the members of the School's faculty and additional employees.

45.     At all times during Plaintiff's employment with the School, Connor exercised operational control over Plaintiff and the other members of the School's faculty and additional employees.

46.     At all times during Plaintiff's employment with the School, Connor could, and in

fact did, affect the terms and/or conditions of the employment of Plaintiff and the other members of the School's faculty and additional employees.

47.    At all times during Plaintiff's employment with the School, Connor involved herself in all aspects of the School's operations, including Plaintiff's work as a Greenhouse Keeper.

48.    At all times during Plaintiff's employment with the School, Connor had the power to, and in fact did, hire and fire School employees, including Plaintiff and other faculty members.

49.    Connor hired Plaintiff to work at the School.

50.    Connor terminated Plaintiff's employment from the School.

51.    At all times during Plaintiff's employment with the School, Connor supervised and controlled employee work schedules and/or conditions of employment, including, but not limited to, monitoring and/or supervising Plaintiff's work schedule.

52.    Upon information and belief, Connor determined, or substantially influenced, Plaintiff's salary.

53.    Upon information and belief, Connor determined, or substantially influenced, the frequency of the payment of Plaintiff's wages.

54.    Upon information and belief, at all times during Plaintiff's employment with the School, Connor maintained employment records regarding the School's employees including Plaintiff.

55.    At all times during Plaintiff's employment with the School, Connor exercised supervisory and/or managerial authority over Plaintiff.

56.    Upon information and belief, during Plaintiff's employment with the School,  the School had a policy, practice, procedure, and/or custom of failing to provide the written FMLA

notice of rights and obligations required by 29 C.F.R. § 825.300(c) or the written FMLA

designation notice required by 29 C.F.R. § 825.300(d), to Plaintiff, and upon information and

belief, to similarly situated FMLA-eligible employees, FMLA-eligible male employees, and/or

FMLA-eligible male caregiver employees.

**Defendant Director of Finance and Operations Peter Ganzenmuller**

57.     Upon information and belief, Ganzenmuller is a resident of the State of New York

and/or New Jersey.

58.     At all times during Plaintiff's employment with the School, Ganzenmuller served

as Director of Finance and Operations.

59.     Upon information and belief, Ganzenmuller has had the title of Director of

Finance and Operations since approximately 2009.

60.     Upon information and belief, at all times during Plaintiff's employment with the

School, Ganzenmuller supervised employees of the School.

61.     At all times during Plaintiff's employment with the School, Ganzenmuller was an

employer and/or joint employer within the meaning of the FMLA.

62.     At all times during Plaintiff's employment with the School, Ganzenmuller was a

supervisor and/or manager within the meaning of the FMLA.

63.     Upon information and belief, at all times during Plaintiff's employment with the

School, Ganzenmuller exercised supervisory authority over employees of the School.

64.     At all times during Plaintiff's employment with the School, Ganzenmuller

exercised operational control over Plaintiff and the other members of the School's faculty and

additional employees.

65.     Upon information and belief, at all times during Plaintiff's employment with the

School, Ganzenmuller could, and in fact did, affect the terms and/or conditions of the employment of employees of the School.

66.    Upon information and belief, at all times during Plaintiff's employment with the School, Ganzenmuller maintained employment records regarding the School's employees including Plaintiff.

67.    At all times during Plaintiff's employment with the School, Ganzenmuller exercised supervisory and/or managerial authority over Plaintiff.

**Defendant Austin & Co., Inc.**

68.    Defendant Austin & Co. is a domestic New York corporation with an office headquarters, upon information and belief, located at 20 Corporate Woods Blv., Albany, NY 12211.

69.    Upon information and belief, Austin & Co. provides insurance, employee benefits, human resources consulting, benefits technology, and other services to its clients.

70.    Upon information and belief, at all or some times during Plaintiff's employment with the School, the School was a client of Austin & Co.

71.    Upon information and belief, at all or some times during Plaintiff's employment with the School, Austin & Co. provided some or all of these services to the School Defendants.

72.    Upon information and belief, as stated on its website, Austin & Co. has provided one hundred and sixty-five years of service to its clients.

73.    Upon information and belief, as stated on its website, Austin & Co. is called upon to present on topics relating to employee benefits, health care reform, human resources, and risk management, and as current events in the industry impact its clients, it hosts timely programs and distributes newsletters and alerts to keep its client informed.

74.    Upon information and belief, the services that Austin & Co. provides its clients include human resources consulting on demand, in which certified human resources professionals guide its clients' teams on human resources best practices and compliance to protect its clients' business and ensure their success, as well as human resources outsourcing which is the most hands on assistance it can provide its clients.

75.    Upon information and belief, Austin & Co. provided these services to the School Defendants.

76.    Upon information and belief, at all times during Plaintiff's employment with the School, Austin & Co. employed Stacey Lybrand as a human resources consultant.

77.    Upon information and belief, during all or some of Plaintiff's employment with the School, Lybrand was assigned by Austin & Co. to provide employee benefit and/or human resources services to the School

78.    Upon information and belief, Lybrand was a supervisor at Austin & Co.

79.    Upon information and belief, Austin & Co. employed Alicia Morocco as a human resources consultant from approximately October 2017 to July 2018.

80.    Upon information and belief, during some or all of Plaintiff's employment with the School, Morocco was assigned by Austin & Co. to provide human resources services to the School.

81.    At all times throughout Plaintiff's employment with the School, Austin & Co. had more than four employees and/or independent contractors in its employ.

82.    At all times throughout Plaintiff's employment with the School, Austin & Co. had more than four employees.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

83.    Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission on or about November 26, 2018, and received a notice of right to sue on or about June 8, 2019.

## FACTUAL ALLEGATIONS

84.    Plaintiff began working at the School as a Greenhouse Keeper on or about July 22, 2013.

85.    Plaintiff excelled in his role as a Greenhouse Keeper for the School from July 22, 2013 until his termination on February 7, 2018.

86.    Plaintiff's job duties in the Greenhouse Keeper role included: (1) planning and implementation of instruction for grades nursery through eighth grade; (2) collaborating with other faculty within the science department on student science exhibitions; (3) maintenance of greenhouse and plant collection; (4) ordering and maintaining the appropriate plants and supplies needed for effective upkeep of the greenhouse; (5) maintenance of organic pest control; (6) representing the school nationally and locally at educational conferences; (7) planning field trips for students to botanical sites; and (8) supervising student activities.

87.    Prior to Connor's knowledge of Plaintiff's FMLA eligibility, request for FMLA leave, and/or announcement of his forthcoming male and/or male caregiver status, Plaintiff consistently received praise from Connor and additional supervisors for his work as a Greenhouse Keeper.

88.    Plaintiff's supervisors, including Connor and the School's Division Directors Emily Holt and Anne Rabbino, gave Plaintiff excellent performance reviews each year from 2013 through April 12, 2017.

89.    For example, Connor and/or the School gave Plaintiff a $12,000 raise effective July 2016, because of his excellent performance as the School's Greenhouse Keeper.

90.    On or about April 7, 2017, the School made an offer to Plaintiff for a renewed teaching contract for the 2017/2018 school year, which he subsequently accepted.

91.    This offer was the School's fifth contract offer to and fourth contract renewal with Plaintiff.

92.    On or about April 12, 2017, Plaintiff met in-person with Connor for this annual oral performance review.

93.    During this meeting, Connor gave Plaintiff a glowing annual performance review for the 2016-2017 school year.

94.    Among other aspects of this glowing review, Connor stated that there were no performance issues with Plaintiff's work and that she "love[d] the work that [he's] doing with the kids and the students."

95.    At the conclusion of this glowing performance evaluation, Plaintiff disclosed that his wife was pregnant and due to give birth in approximately August 2017.

96.    Plaintiff requested to take his FMLA leave on an intermittent basis beginning in September 2017.

97.    Rather than requesting three (3) consecutive months of FMLA leave, Plaintiff requested intermittent FMLA leave for six months on a modified 20-hour a week schedule.

98.    Plaintiff asked to use this intermittent leave structure because of his dedication to his job and students.

99.    Plaintiff was dedicated to ensuring that his FMLA leave would not interfere with the high quality of his classes and the proper maintenance of the greenhouse during his FMLA leave.

100.    Plaintiff was concerned that a contractor or temporary Greenhouse Keeper might not provide the same high quality teaching and maintenance during a consecutive three-month FMLA absence.

101.    By requesting intermittent leave, Plaintiff intended to structure his FMLA leave so that there would not be a three-month gap of inferior or no greenhouse instruction in the curriculum while he was on leave.

102.    Connor directed Plaintiff to contact the School's human resources vendor Austin & Co. to discuss the details of his FMLA leave.

103.    As instructed, Plaintiff reached out to the School's human resources contact at Austin & Co. and requested intermittent leave for six months following the birth of his daughter.

104.    Following a back and forth with Defendants regarding the possible structure of intermittent leave, Plaintiff and Defendants eventually agreed to a six-month 20-hour a week intermittent leave schedule.  This schedule included two early morning assignments and two days completely away from work.

105.    After his April 12, 2017 performance evaluation, Plaintiff continued to excel in his work for the remainder of the school year ending June 14, 2017.

106.    On or about June 6, 2017, Plaintiff's wife went into premature labor.

107.    Plaintiff requested leave for this day to care for and emotionally support his wife during her hospitalization for premature labor.

108.    Connor approved this leave request.

109.    Plaintiff's wife ultimately did not give birth during this premature labor.

110.    Plaintiff's annual contract salary did not include work during the summer break.

111.    Because Plaintiff's annual contract with the School did not include summer work,

at the beginning of each summer, Plaintiff had previously discussed summer greenhouse coverage with Connor.  Pursuant to these conversations, for each previous summer the School had: (1) agreed to additionally compensate Plaintiff for summer break coverage of the greenhouse; or (2) asked Plaintiff to help facilitate the hiring of a summer contractor to be paid by the School to maintain the greenhouse.

112.    These summer coverage discussions had previously resulted in Plaintiff facilitating the hiring of a summer contractor in all but one of the School's summer breaks since 2014.

113.    On or about June 16, 2017, Connor asked Plaintiff to think about whether he wished to cover the greenhouse for the summer or have the School hire a contractor for summer coverage.

114.    Later the same day, Plaintiff asked the School's Director of Finance and Operations, Peter Ganzenmuller ("Ganzenmuller") for the FMLA forms for his upcoming FMLA leave.

115.    Ganzenmuller told Plaintiff that the FMLA forms were not necessary, were a mere "formality," and were only used "for women."

116.    On or about June 22, 2017, Plaintiff notified Connor that he would prefer to have the school hire a contractor to cover the greenhouse for the summer.  Plaintiff explained that his wife was in the last stages of her pregnancy, which made him want to be close to home to support her, particularly because of her prior premature labor.

117.    On or about July 12, 2017, Connor summoned Plaintiff to an urgent "important" meeting at the School in the middle of the summer break.

118.    When Plaintiff arrived at the School to meet with Connor on or about July 14,

2017, Connor informed him that she was placing him on probation.

119.    Connor began the meeting by telling Plaintiff that he "better get a pediatrician with weekend hours because [he] w[ould] not be able to take any more time off if the baby is sick during school hours."

120.    Connor stated that she was placing Plaintiff on probation because of "all of the personal days" he had taken.

121.    Connor also threatened Plaintiff that she would take away his employment benefit of tuition-free attendance at the school for his (unborn) daughter if he took any additional leave.

122.    The time-period between Plaintiff's positive April 12, 2017 evaluation and Connor's placement of Plaintiff on probation on July 14, 2017, included only nine weeks of working school days before the summer break.

123.    When Plaintiff expressed surprise at the probation in light of his recent positive performance evaluation two months before in April 2017, Connor said that the probation "was not about" his performance.

124.    Despite Connor's leave-based criticisms of Plaintiff, when Plaintiff asked Connor if she had any issues with his teaching abilities or professionalism, she confirmed that she did not.

125.    Instead, Connor stated the School's Division Directors had told her that Plaintiff took too much time off related to family members and that Plaintiff "had a lot of sick family members over the years."

126.    Plaintiff responded to these statements that some of his leave had been taken because his mother-in-law had a "very serious heart condition," and noted that Connor had approved the relevant leave and known about these condition(s).

127.    Connor also told Plaintiff that he was "lucky to have a job" after declining to work over the summer break because of his wife's pregnancy.

128.    When Plaintiff reiterated his previous explanation that he had declined to work over the summer because his wife had been very ill during her pregnancy, Connor told Plaintiff that he "better tell [his] wife that next time [he was] going to get fired."

129.    Connor said that if Plaintiff "wanted to quit now" she would help him find a job and could "still arrange some way" for his (unborn) daughter to attend the School tuition-free.

130.    Connor also elaborated that, if he did not quit, he would be on probation until December 31, 2017.

131.    Connor also stated that she would check-in with Plaintiff in October 2017 to see if her was back in her good graces.

132.    Connor further stated that Plaintiff was "not going to be allowed to take" his (unborn) daughter "to the doctor during school work hours," because he "would not be allowed to take time off for that reason."

133.    This statement communicated to Plaintiff that Connor viewed childcare as work that Plaintiff should not be involved in handling or responsible for.

134.    Connor also screamed at and threatened Plaintiff.

135.    Connor ended the meeting by instructing Plaintiff to schedule a follow-up meeting with her regarding his progress in October 2017, which was approximately one month after his intermittent FMLA leave was set to begin.

136.    The time off that Connor referenced in this conversation had been time that Plaintiff had requested as leave, and which leave had been approved by Connor and/or one of Plaintiff's other supervisors.

137.    Connor criticized Plaintiff's use of leave despite Plaintiff having obtained approval for the referenced personal days and having used his allotted PTO balance to do so in accordance with the School's policies.

138.    In addition, at least three of the referenced leave days taken during the 2016/2017 school year, had been used to: (1) help care for Plaintiff's pregnant wife during a near miscarriage/premature birth; or (2) help care for Plaintiff's mother-in-law regarding her congestive heart failure, cancer evaluation, and/or related in-patient care.

139.    In addition, Plaintiff took several additional days of leave to help care for his mother-in-law's heart condition.

140.    In each instance that Plaintiff took leave for a family care-based reason, he made the School aware of the family care-based and/or serious health condition-based reason for the leave, and moreover, obtained approval for the leave.

141.    Despite being placed on probation Plaintiff continued to perform at a high level when he returned to the School after the summer break.

142.    Plaintiff's daughter was born on or about August 15, 2017.

143.    Plaintiff became a working father and caregiver on or about August 15, 2017.

144.    Plaintiff began taking intermittent FMLA leave on or about September 8, 2017.

145.    As instructed by Connor in their July 2017 meeting, during September and October 2017, Plaintiff made several attempts to schedule a follow-up meeting to their July 2017 meeting, in which she had placed him on probation.

146.    Other than a short phone conversation during August 2018 regarding some of Plaintiff's ideas for the next year's curriculum, Connor never substantively responded to Plaintiff's attempts to schedule a follow-up meeting or discuss the status of his probation.

147.    During December 2017, Connor did not indicate whether Plaintiff was still on probation.

148.    On or about January 29, 2018, Plaintiff asked Defendants about his eligibility for leave under New York's new paid family leave law.

149.    This request led to a continuation and/or escalation of retaliation relating to Plaintiff's requests for, use of, and/or continuing eligibility for FMLA leave.

150.    On or about February 6, 2018, the day after human resources confirmed Plaintiff's eligibility for New York paid family leave, Connor emailed Plaintiff and reprimanded him for arriving to the School at 9:05 a.m. that morning.

151.    Plaintiff replied to this email the same day explaining that he had not arrived late, but instead, had arrived at that time pursuant to his FMLA intermittent leave schedule.

152.    Connor in turn responded in an email stating "for someone on probation for performance issues I am stymied as to how you could fail to read the handbook on expectations for arrival times."

153.    The next day, Connor met with Plaintiff and again accused him of being "late" the previous day.

154.    Plaintiff again explained that his arrival time was based on his approved FMLA intermittent leave schedule.

155.    Connor then began screaming at Plaintiff about the greenhouse's appearance, screamed that Plaintiff had arrived late to work the previous day at 9:10 a.m., and demanded copies of his lesson plans for the upcoming weeks.

156.    When Plaintiff restated that he was on an intermittent FMLA leave and had arrived in compliance with his approved intermittent leave schedule, Connor said that Plaintiff

had "taken enough leave already" and that every hour that he is "late" is "time taken away from the greenhouse."

157.    Plaintiff subsequently printed out his lesson plans for the entire year and gave them to Connor.

158.    In addition, out of concern for being terminated for using FMLA leave, Plaintiff offered to "make up" for the "lost time" by staying to work late that day.

159.    Plaintiff subsequently worked late that day beyond the time required by his intermittent leave schedule in order to attempt to appease Connor.

160.    Later that evening, Connor sent Plaintiff an email terminating his employment from the School for purported "insubordination" and "poor performance."

161.    Defendants never provided Plaintiff with the written FMLA rights and responsibilities notice required by 29 C.F.R. § 825.300(c), or the written FMLA designation notice required by 29 C.F.R. § 825.300(d), at any time during his employment with the School.

## CLASS ACTION ALLEGATIONS

162.    Plaintiff brings the first cause of action for FMLA interference as a Class Action against the School pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (c)(4), on behalf of a class of all the School's similarly situated FMLA-eligible employees under 29 U.S.C. § 2611(2), employed by the School within three years of the filing of the instant Class Action Complaint through the resolution of this action, who have been eligible for FMLA leave during this period, but to whom the School did not provide the written notice of rights and responsibilities required by 29 C.F.R. § 825.300(c) and/or the written designation notice required by 29 C.F.R. § 825.300(d) (the "FMLA Class").

163.    Plaintiff seeks, on behalf of himself and the FMLA Class, a class-wide declaration

20

of the School's: (1) liability to the FMLA Class for violations of the FMLA's statutory notice requirements under 29 C.F.R. § 825.300(c) and 29 C.F.R. § 825.300(d); (2) willfulness regarding the School's class-wide violation of the statutory notice requirements of 29 C.F.R. § 825.300(c) and 29 C.F.R. § 825.300(d); and (3) the absence of the School's good faith and/or the absence reasonable grounds for the School believing that it had complied with the FMLA, and the School's resulting liability for liquidated damages for its class-wide violation of the statutory notice requirements of 29 C.F.R. § 825.300(c) and 29 C.F.R. § 825.300(d).

164.    Plaintiff additionally seeks, on behalf of himself and the FMLA Class, a class-wide injunction prohibiting further FMLA violations of 29 C.F.R. § 825.300(c) and 29 C.F.R. § 825.300(d) by the School, and remediating the effects of the School's previous violations of 29 C.F.R. § 825.300(c) and 29 C.F.R. § 825.300(d).

165.    Excluded from the FMLA Class are Defendants, Defendants' legal representatives, Emily Holt, Anne Rabbino, and all other members of the School's senior administration, as well as the School's officers, directors, assigns, and successors, any individual who has or at any time during the class period had a controlling interest in Defendants, the Judge(s) to whom this case is assigned and any member of the Judge's immediate family, all current or former employees of Defendants with claims against Defendants filed in state or federal court prior to the filing of this Class Action Complaint, and all persons who will submit timely and otherwise proper requests for exclusion from the FMLA Class.

166.    Plaintiff is a member of the FMLA Class that he seeks to represent.

167.    Plaintiff's claims are typical of the claims of the FMLA Class.

168.    Upon information and belief, the members of the FMLA Class identified herein are so numerous that joinder of all members is impracticable.  Although Plaintiff does not know

precisely how many FMLA Class members the School has employed during the relevant time period, upon information and belief, their number is far greater than can be feasibly addressed through joinder.

169.    There are questions of law and fact common to the FMLA Class.  Common questions include, but are not limited to: (1) whether the School was an employer within the meaning of the FMLA; (2) whether the School had a policy, practice, and/or procedure of failing to provide written FMLA notices required by 29 C.F.R. § 825.300(c) and/or 29 C.F.R. § 825.300(d), to all or some categories of FMLA-eligible School employees; (3) whether the School's violations of 29 C.F.R. § 825.300(c) and/or 29 C.F.R. § 825.300(d) were willful; (4) whether the School can meet its burden to show that its FMLA violations of 29 C.F.R. § 825.300(c) and 29 C.F.R. § 825.300(d) were in good faith and/or based on reasonable grounds for the School believing it had complied with the FMLA; (6) whether class-wide declaratory relief is warranted and the scope thereof; (7) whether class-wide injunctive relief is warranted and the scope thereof; and (8) the amount of statutory attorney's fees and costs to be awarded.

170.    With respect to the FMLA Class and the first cause of action, upon information and belief, the School had a policy, practice, or procedure of failing to provide the written statutory FMLA notices required by 29 C.F.R. § 825.300(c) and 29 C.F.R. § 825.300(d), to FMLA-eligible school employees and/or failing to provide this statutory notice to its FMLA-eligible male employees and/or FMLA-eligible male caregivers.

171.    These failures interfered with Plaintiff's, and upon information and belief, the FMLA Class's ability to fully exercise, utilize, protect, and/or most effectively structure their FMLA leave.

172.    Upon information and belief, class certification of the FMLA Class is appropriate

pursuant to Fed. R. Civ. P. 23(b)(2), because the School has acted and/or refused to act on grounds generally applicable to the class, making declaratory and injunctive relief appropriate with respect to Plaintiff and the class as a whole.

173.    Class certification is appropriate pursuant to Fed. R. Civ. P. 23(c)(4) because the resolution of additional common issues would reduce the range of issues in dispute and promote judicial economy.  For example, resolution of whether the School had a policy, practice, and/or procedure of failing to provide all FMLA-eligible employees, FMLA-eligible male employees, and/or FMLA-eligible male caregivers with the written FMLA notices required by 29 C.F.R. § 825.300(c) and/or 29 C.F.R. § 825.300(d), would reduce the range of issues in dispute and promote judicial economy, by initially determining whether there was class-wide liability in the first instance.

174.    Similarly, resolution of the appropriate nature and scope of declaratory and/or injunctive relief for the FMLA Class pursuant to Fed. R. Civ. P. 23(c)(4), would reduce the range of issues in dispute and promote judicial economy.

175.    In addition, resolution of any one of the other issues referenced above would reduce the range of issues in dispute and promote judicial economy, if resolved as an issues class pursuant to Fed. R. Civ. P. 23(c)(4).

176.    Upon information and belief, Plaintiff and the FMLA Class were subject to the same or very similar policies, practices, and/or procedures regarding the provision of the FMLA notices required by 29 C.F.R. § 825.300(c) and 29 C.F.R. § 825.300(d), and have sustained the same or similar types of injury as a result of the School's violations of these FMLA notice requirements.

177.    Upon information and belief, the School's class-wide violations of the written

FMLA notice requirements of 29 C.F.R. § 825.300(c) and 29 C.F.R. § 825.300(d) were willful.

178.    Upon information and belief, the School's class-wide violations of the written FMLA notice requirements of 29 C.F.R. § 825.300(c) and 29 C.F.R. § 825.300(d) were not in good faith and/or were not based on reasonable grounds for the School believing it had complied with the FMLA.

179.    Plaintiff will fairly and adequately represent and protect the interests of the members of the FMLA Class. The similarly situated members of the FMLA Class are known to Defendants, are readily identifiable, and can be located through the School's records.

180.    The members of the FMLA Class have been injured necessitating the resolution of common issues regarding declaratory and injunctive relief.

181.    Plaintiff has retained counsel competent and experienced in complex class actions.

### FIRST CAUSE OF ACTION
### Family and Medical Leave Act § 2615 – Interference
### (Brought By Plaintiff Against the School, Connor, and Ganzenmuller and by Plaintiff and the FMLA Class Against the School)

182.    Plaintiff re-alleges and incorporates by reference all allegations in the preceding paragraphs.

183.    At all times during and, upon information and belief, after Plaintiff's employment with the School, the School Defendants were the employers and/or joint employers of Plaintiff and the FMLA Class, within the meaning of 29 U.S.C. § 2611(4) and its associated regulations.

184.    At all times during and, upon information and belief, after Plaintiff's employment with the School, the School Defendants were engaged in commerce and/or an industry and/or activity affecting commerce.

185.    At all times during and, upon information and belief, after Plaintiff's employment with the School, Plaintiff and the members of the FMLA Class were employees within the meaning of the FMLA, and eligible employees within the meaning of 29 U.S.C. § 2611(2).

186.    During his employment with the School, Plaintiff was eligible for protected FMLA leave, pursuant to 29 U.S.C. § 2612, because of, *inter alia*, the birth of his daughter, his wife's pregnancy, pregnancy complications, and/or serious health condition, and/or his mother-in-law's serious health condition.

187.    The School interfered with Plaintiff's, and upon information and belief, the FMLA Class's FMLA rights, by failing to provide and/or timely provide, the written notices of FMLA rights and responsibilities required by 29 C.F.R. § 825.300(c) and/or the written designation notice required by 29 C.F.R. § 825.300(d).

188.    The School Defendants' interference prevented Plaintiff and, upon information and belief, the FMLA Class, from fully exercising, utilizing, protecting, and/or most effectively structuring their FMLA leave.

189.    The School Defendants also interfered with Plaintiff's FMLA leave rights by discouraging him from utilizing FMLA leave, placing him on probation in response to his FMLA leave requests and/or use of FMLA leave, giving him a retaliatory negative evaluation, giving him inaccurate and pretextual criticisms of his work, screaming at and threatening him including regarding his use of FMLA leave and the threatened withdrawal of his employment benefit of tuition-free attendance at the School for his daughter, threatening him with termination, encouraging him to resign, and ultimately terminating him.

190.    Plaintiff requested and/or utilized FMLA-protected leave concerning the birth of his daughter, as well as his mother-in-law and his wife's serious health condition(s).

191.    As an eligible employee, Plaintiff was entitled to take approximately twelve weeks of protected FMLA leave.

192.    By refusing to provide Plaintiff with the written notice of rights and responsibilities required by 29 C.F.R. § 825.300(c), and the written notice of designation required by 29 C.F.R. § 825.300(c), the School willfully interfered with, restrained, and/or denied Plaintiff's full exercise of his rights under the FMLA.

193.    By refusing to provide Plaintiff and, upon information and belief, the FMLA Class with their written statutory notices required by 29 C.F.R. § 825.300(c) and/or 29 C.F.R. § 825.300(d), the School willfully interfered with, restrained, and/or denied their full exercise of their leave rights under the FMLA.

194.    Connor further interfered with Plaintiff's FMLA rights by threatening that him, including that if he continued to utilize FMLA leave he would lose the employment benefit of tuition-free attendance at the School for his daughter.

195.    Connor further interfered with Plaintiff's FMLA rights by threatening that if he used more leave he would be terminated.

196.    Connor further interfered with Plaintiff's FMLA rights by stating and threatening that he had used too much FMLA leave.

197.    Connor further interfered with Plaintiff's FMLA rights by threatening him with termination.

198.    Connor further interfered with Plaintiff's FMLA rights by suggesting that he resign.

199.    Connor further interfered with Plaintiff's FMLA rights by terminating his employment.

200.    Ganzenmuller interfered with Plaintiff's FMLA rights by responding to his request for FMLA forms regarding his FMLA leave by stating that they were not necessary, were a mere "formality," and were only used "for women."

201.    Plaintiff suffered damages as a result of the School Defendants' actions.

202.    Upon information and belief, at all times relevant, the School Defendants' conduct was willful.

203.    Upon information and belief, the School Defendants' conduct was not in good faith.

204.    Upon information and belief, the School Defendants did not have reasonable grounds for believing that their acts or omissions complied with the FMLA.

205.    As a result of the School Defendants' conduct, Plaintiff is entitled to recovery of lost wages, salary and employment benefits including lost tuition-free attendance at the School for his daughter, lost other compensation, reinstatement, liquidated damages, declaratory relief, injunctive relief, attorney's fees, expert witness fees, and other costs of the action.

## SECOND CAUSE OF ACTION
### Family and Medical Leave Act § 2615 – Retaliation
### (Brought by Plaintiff Against the School and Connor)

206.    Plaintiff re-alleges and incorporates by reference all allegations in the preceding paragraphs.

207.    At all times during Plaintiff's employment with the School, the School Defendants were the employers and/or joint employers of Plaintiff within the meaning of 29 U.S.C. § 2611(4) and its associated regulations.

208.    At all times during Plaintiff's employment with the School, the School Defendants were engaged in commerce and/or an industry and/or activity affecting commerce.

209.    At all times relevant, Plaintiff was an employee within the meaning of the FMLA and an eligible employee within the meaning of 29 U.S.C. § 2611(2).

210.    Plaintiff was eligible for protected FMLA leave, pursuant to pursuant to 29 U.S.C. § 2612, because of, *inter alia*, the birth of his daughter, his wife's pregnancy, pregnancy complications, and/or serious health condition, and/or his mother-in-law's serious health condition.

211.    The School and Connor took materially adverse actions against Plaintiff because (or in part because) Plaintiff because of his requests for, use of, continuing need for, and/or eligibility for FMLA leave, including by placing him on probation in response to his FMLA leave request and/or use of FMLA leave, giving him a retaliatory negative evaluation, making inaccurate and pretextual  criticisms of his work, screaming at and threatening him including regarding his use of FMLA leave and the threatened withdrawal of his employment benefit of tuition-free attendance at the School for his daughter, threatening him with termination, encouraging him to resign, and ultimately terminating him.

212.    The School and Connor also took materially adverse actions against Plaintiff because (or in part because) Plaintiff engaged in the protected activity of complaining about and opposing the School Defendants' FMLA retaliation and interference, including by giving him inaccurate and pretextual criticisms of his work, screaming at and threatening him with termination, and ultimately terminating him.

213.    The School and Connor retaliated against Plaintiff because (or in part because) he requested, attempted to request, used, and/or attempted to use FMLA leave.

214.    A reasonable employee would have found the School and Connor's retaliatory conduct materially adverse.

215.    The School and Connor's conduct might have dissuaded and/or was likely to dissuade a reasonable worker from engaging in protected activity.

216.    Plaintiff suffered damages as a result of the School and Connor's actions.

217.    Upon information and belief, the School and Connor's retaliatory conduct was willful.

218.    Upon information and belief, the School and/or Connor's conduct was not in good faith, nor did they have reasonable grounds for believing that their acts or omissions were in compliance with the FMLA.

219.    As a result of the School and Connor's conduct, Plaintiff is entitled to recovery of lost compensation, lost employee benefits including lost tuition-free attendance at the School for his daughter, lost other compensation, reinstatement, liquidated damages, declaratory relief, injunctive relief, attorney's fees, expert witness fees, and other costs of the action.

**THIRD CAUSE OF ACTION**
**New York City Human Rights Law Section 8-107(3) – Disparate Treatment Gender Discrimination**
**(Brought by Plaintiff Against the School, Connor, and Ganzenmuller)**

220.    Plaintiff re-alleges and incorporates by reference all allegations in the preceding paragraphs.

221.    The School Defendants discriminated against Plaintiff by failing to provide him with the written FMLA notices required by 29 C.F.R. § 825.300(c) and 29 C.F.R. § 825.300(d), because of (or in part because of) his male gender.

222.    At all times during Plaintiff's employment with the School, the School had more than four employees and/or independent contractors in its employ.

223.    At all times during Plaintiff's employment with the School, he was a covered employee within the meaning of the NYCHRL.

224.    At all times during Plaintiff's employment with the School, the School

Defendants were covered employers within the meaning of the NYCHRL.

225.    The School is vicariously liable for Connor and Ganzenmuller's discrimination

pursuant to N.Y.C. Admin. Code § 8-107(13)(b).

226.    Connor and Ganzenmuller participated in the conduct giving rise to these

violations.

227.    As a supervisor, manager, and/or participant in the discrimination against

Plaintiff, Connor and Ganzenmuller are individually liable to Plaintiff for their NYCHRL

violations.

228.    The School Defendants' conduct constituted willful wanton negligence,

recklessness, and/or conscious disregard of the NYCHRL rights of others, or conduct so reckless

as to amount to such disregard.

229.    Plaintiff suffered damages as a result of the School Defendants' discrimination.

230.    The School Defendants' discrimination had an impact in New York City.

231.    As a result of the School Defendants' discrimination, Plaintiff is entitled to back

pay, compensatory damages, punitive damages, declaratory relief, injunctive relief, attorney's

fees, expert fees, costs, and other compensation pursuant to NYC Admin. Code § 8-502(a).

**FOURTH CAUSE OF ACTION**
**New York City Human Rights Law Section 8-107(3) "Gender Plus" Male Caregiver**
**Discrimination and Male Caregiver Gender Stereotyping Discrimination**
**(Brought by Plaintiff Against the School, Connor, and Ganzenmuller)**

232.    Plaintiff re-alleges and incorporates by reference all allegations in the preceding

paragraphs.

233.    The School Defendants discriminated against Plaintiff by treating him less well

than female employees and/or female caregivers, because (or in part because) of this male sex in

combination with his caregiver status, and/or because (or in part because) of the School

Defendants' stereotypical assumptions concerning male caregivers.

234.    The School Defendants created a male caregiver-based hostile work environment.

235.    The School Defendants engaged in male caregiver-based harassment.

236.    The School Defendants engaged in sex stereotyping discrimination against

Plaintiff as a male caregiver.

237.    At all times during Plaintiff's employment with the School, the School had more

than four employees and/or independent contractors in its employ.

238.    At all times during Plaintiff's employment with the School, Plaintiff was a

covered employee within the meaning of the NYCHRL.

239.    The School is vicariously liable for Connor and Ganzenmuller's discrimination

pursuant to N.Y.C. Admin. Code § 8-107(13)(b).

240.    As a supervisor, manager, and/or participant in the discrimination against

Plaintiff, Connor and Ganzenmuller are individually liable to Plaintiff for their NYCHRL

violations.

241.    Connor and Ganzenmuller participated in the conduct giving rise to these

violations.

242.    The School Defendants' conduct constituted willful wanton negligence,

recklessness, and/or conscious disregard of the NYCHRL rights of others, or conduct so reckless

as to amount to such disregard.

243.    Plaintiff suffered damages as a result of the School Defendants' discrimination.

244.    The School Defendants' discrimination had an impact in New York City.

245.    As a result of the School Defendants' discrimination, Plaintiff is entitled to back

pay, front pay, reinstatement, compensatory damages, punitive damages, declaratory relief, injunctive relief, attorney's fees, expert fees, costs, and other compensation pursuant to NYC Admin. Code § 8-502(a).

**FIFTH CAUSE OF ACTION**
**New York City Human Rights Law Section 8-107(3) – Caregiver Harassment, Male Caregiver Harassment and Hostile Work Environment**
**(Brought by Plaintiff Against the School, Connor, and Ganzenmuller)**

246.    Plaintiff re-alleges and incorporates by reference all allegations in the preceding paragraphs.

247.    The School Defendants discriminated against Plaintiff by subjecting him to caregiver harassment, and/or male caregiver harassment and a caregiver-based and/or male caregiver-based hostile work environment in violation of the NYCHRL.

248.    This conduct resulted in Plaintiff being treated less well because (or in part because) of his caregiver and/or male caregiver status.

249.    As a result of the School Defendant's caregiver and/or male caregiver harassment and caregiver and/or male caregiver-based hostile work environment, Plaintiff is entitled to compensatory damages, punitive damages, declaratory relief, injunctive relief, attorney's fees, expert fees, costs, and other compensation pursuant to NYC Admin. Code § 8-502(a).At all times during Plaintiff's employment with the School, the School had more than four employees and/or independent contractors in its employ.

250.    At all times during Plaintiff's employment with the School, Plaintiff was a covered employee within the meaning of the NYCHRL.

251.    At all times during Plaintiff's employment with the School, the School had more than four employees and/or independent contractors in its employ.

252.    The School is vicariously liable for Connor's and Ganzenmuller's discrimination

pursuant to N.Y.C. Admin. Code § 8-107(13)(b).

253.    As a supervisor, manager, and/or participant in the discrimination against Plaintiff, Connor and Ganzenmuller are individually liable to Plaintiff for their NYCHRL violations.

254.    Connor and Ganzenmuller participated in the conduct giving rise to these violations.

255.    The School Defendants' conduct constituted willful wanton negligence, recklessness, and/or conscious disregard of the NYCHRL rights of others, or conduct so reckless as to amount to such disregard.

256.    Plaintiff suffered damages as a result of the School Defendants' discrimination.

257.    The School Defendants' discrimination had an impact in New York City.

258.    As a result of the School Defendants' discrimination, Plaintiff is entitled to back pay, front pay, reinstatement, compensatory damages, punitive damages, declaratory relief, injunctive relief, attorney's fees, expert fees, costs, and other compensation pursuant to NYC Admin. Code § 8-502(a).

## SIXTH CAUSE OF ACTION
### New York City Human Rights Law Section 8-107(19) – Interference with or Attempted Interference with Protected NYCHRL Rights
### (Brought by Plaintiff Against the School, Connor, and Ganzenmuller)

259.    Plaintiff re-alleges and incorporates by reference all allegations in the preceding paragraphs.

260.    The School Defendants interfered with Plaintiff's NYCHRL rights and/or attempted to interfere with these rights.

261.    Connor threatened Plaintiff, including that if he continued to request leave to care for his daughter, he  would no longer receive tuition-free attendance at the School for his

daughter.

262.    Connor suggested that Plaintiff resign and threatened him with termination.

263.    Connor screamed at and threatened Plaintiff.

264.    Ganzenmuller told Plaintiff that the standard FMLA forms he had requested were only "for women."

265.    Connor engaged in coercion and intimidation and/or attempted to do so, with respect to Plaintiff's enjoyment of his right not to be treated less well because (or in part because) of caregiver status, male caregiver status, and/or protected opposition to and complaints of discrimination and retaliation.

266.    Connor threatened Plaintiff with the loss of employment benefits if he did not forego his right to engage in caregiver obligations, and/or if he did not conform his conduct to male caregiver stereotypes.

267.    Connor's threat of the loss of the employment benefit of tuition-free attendance at the School for his daughter interfered with Plaintiff's NYCHRL rights.

268.    The School Defendants interfered with Plaintiff's right to be free from gender stereotyping of male caregivers and/or attempted to do so.

269.    Connor and Ganzenmuller interfered with Plaintiff's right to be free from being treated less well because (or in part because) of his gender, male caregiver status, and/or protected caregiver status, and/or attempted to do so.

270.    The School Defendants interfered with Plaintiff's NYCHRL rights by placing Plaintiff on probation, threatening to take away his tuition-free admission employment benefit for his daughter, screaming at and threatening him, threatening him with termination, encouraging him to resign, and ultimately terminating his employment.

271.    The School Defendants' conduct constituted coercion, intimidation, and/or threats and/or attempted at coercion, intimidation, and/or threats.At all times during Plaintiff's employment with the School, the School had more than four employees and/or independent contractors in its employ.

272.    The School is vicariously liable for Connor and Ganzenmuller's interference pursuant to N.Y.C. Admin. Code § 8-107(13)(b).

273.    As a supervisor, manager, and/or participant in the discrimination against Plaintiff, Connor and Ganzenmuller are individually liable to Plaintiff for their NYCHRL violations.

274.    Connor and Ganzenmuller participated in the conduct giving rise to these violations.

275.    The School Defendants' conduct constituted willful wanton negligence, recklessness, and/or conscious disregard of the NYCHRL rights of others, or conduct so reckless as to amount to such disregard.

276.    Plaintiff suffered damages as a result of the School Defendants' interference.

277.    The School Defendants' interference had an impact in New York City.

278.    As a result of the School Defendants' interference and/or attempted interference, Plaintiff is entitled to back pay, front pay, reinstatement, compensatory damages, punitive damages, declaratory relief, injunctive relief, attorney's fees, expert fees, costs, and other compensation pursuant to NYC Admin. Code § 8-502(a).

**SEVENTH CAUSE OF ACTION**
**New York City Human Rights Law Section 8-107(7) – Retaliation**
**(Brought by Plaintiff Against the School and Connor)**

279.    Plaintiff re-alleges and incorporates by reference all allegations in the preceding

paragraphs.

280.    The School and Connor took adverse actions against Plaintiff because (or in part because) Plaintiff engaged in the protected activity of complaining about and opposing discrimination and retaliation, including by threatening to take away his tuition-free attendance employment benefit for his daughter, screaming at and threatening him, threatening him with termination, and ultimately terminating his employment.

281.    The School and Connor's retaliatory conduct was reasonably likely to deter a person from engaging in protected activity. At all times during Plaintiff's employment with the School, the School had more than four employees and/or independent contractors in its employ.

282.    Plaintiff was at all times relevant a covered employee within the meaning of the NYCHRL.

283.    The School is vicariously liable for Connor's retaliation pursuant to N.Y.C. Admin. Code § 8-107(13)(b).

284.    As a supervisor, manger, and/or participant in the retaliation, Connor is individually liable to Plaintiff for her NYCHRL violations pursuant to NYC Admin. Code § 8-107(1)(a).

285.    Connor participated in the conduct giving rise to these violations.

286.    The School and/or Connor's conduct constituted willful wanton negligence, recklessness, and/or conscious disregard of the NYCHRL rights of others, or conduct so reckless as to amount to such disregard.

287.    Plaintiff suffered damages as a result of the School and Connor's retaliation.

288.    The School and Connor's retaliation that had an impact in New York City.

289.    As a result of the School and/or Connor's retaliation, Plaintiff is entitled to back

pay, front pay, reinstatement, compensatory damages, punitive damages, declaratory relief, injunctive relief, attorney's fees, expert fees, costs, and other compensation pursuant to NYC Admin. Code § 8-502(a).

## EIGHTH CAUSE OF ACTION
### New York City Human Rights Law Section 8-107(6) – Aiding and Abetting
### (Brought by Plaintiff Against All Defendants)

290.     Plaintiff re-alleges and incorporates by reference all allegations in the preceding paragraphs.

291.     Defendants aided, abetted, incited, compelled, and/or coerced each other's NYCHRL violations against Plaintiff described herein, and/or attempted to do so.

292.     At all times during Plaintiff's employment with the School, the School had more than four employees and/or independent contractors in its employ.

293.     At all times during Plaintiff's employment with the School, Plaintiff was a covered employee within the meaning of the NYCHRL.

294.     Pursuant to N.Y.C. Admin. Code § 8-107(13)(b), the School is vicariously liable for the aiding, abetting, inciting, compelling, and/or coercing of the NYCHRL, and/or attempts to do so, by Connor and Ganzenmuller.

295.     As a supervisor, manager, and/or participant in the NYCHRL violations described herein, Connor and Ganzenmuller are individually liable to Plaintiff for aiding, abetting, inciting, compelling, and/or coercing the NYCHRL violations described herein, and/or for their attempts to do so, pursuant to N.Y.C. Admin. Code § 8-107(1)(a).

296.     Connor and Ganzenmuller participated in the conduct giving rise to these violations.

297.     The Defendants' conduct constituted willful wanton negligence, recklessness,

and/or conscious disregard of the NYCHRL rights of others, or conduct so reckless as to amount to such disregard.

298.    Plaintiff suffered damages, as a result of Defendants' aiding, abetting, inciting, compelling, and/or coercing of the NYCHRL violations of the other Defendants described herein, and/or as a result of their attempts to do so.

299.    Defendants' aiding, abetting, inciting, compelling, and/or coercing of the other Defendant's NYCHRL violations described herein, and/or their attempts to do so, had an impact in New York City.

300.    As a result of the Defendants' violations of § 8-107(6), Plaintiff is entitled to back pay, front pay, reinstatement, compensatory damages, punitive damages, declaratory relief, injunctive relief, attorney's fees, expert fees, costs, and other compensation pursuant to NYC Admin. Code § 8-502(a).

**NINTH CAUSE OF ACTION**
**New York City Human Rights Law Section 8-107(20) – Relationship or Association Disability Discrimination**
**(Brought by Plaintiff Against the School and Connor)**

301.    Plaintiff re-alleges and incorporates by reference all allegations in the preceding paragraphs.

302.    The School and Connor treated Plaintiff less well because of the actual and/or perceived disability of Plaintiff's known relationship and/or connection with family members, including his mother-in-law. Plaintiff was at all times relevant a covered employee within the meaning of the NYCHRL.

303.    At all times during Plaintiff's employment with the School, the School had more than four employees and/or independent contractors in its employ.

304.    The School is vicariously liable for Connor's discrimination pursuant to N.Y.C.

Admin. Code § 8-107(13)(b).

305.    As a supervisor, manager, and/or as a participant in the discrimination, Connor is individually liable to Plaintiff for her NYCHRL violations pursuant to NYC Admin. Code § 8-107(1)(a).

306.    The School and/or Connor's conduct constituted willful wanton negligence, recklessness, and/or conscious disregard of the NYCHRL rights of others, or conduct so reckless as to amount to such disregard.

307.    Plaintiff suffered damages as a result of the School and Connor's discrimination.

308.    The School and Connor's discrimination had an impact in New York City.

309.    As a result of the School and/or Connor's discrimination, Plaintiff is entitled to back pay, front pay, reinstatement, compensatory damages, punitive damages, declaratory relief, injunctive relief, attorney's fees, expert fees, costs, and other compensation pursuant to NYC Admin. Code § 8-502(a).

### TENTH CAUSE OF ACTION
### Title VII – Disparate Treatment Sex Discrimination
### (Brought by Plaintiff Against the School)

310.    Plaintiff re-alleges and incorporates by reference all allegations in the preceding paragraphs.

311.    The School discriminated against Plaintiff because of his male sex by failing to provide him with the required FMLA statutory rights and responsibilities notice required by 29 C.F.R. § 825.300(c) because (or in part because) of his male sex.

312.    At all times during Plaintiff's employment with the School, he was a covered employee within the meaning of Title VII.

313.    At all times during Plaintiff's employment with the School, the School had more

than fifteen employees.

314.    The School's discrimination was intentional and done with malice and/or reckless indifference to the federally protected rights of Plaintiff.

315.    Plaintiff suffered damages as a result of the School's discrimination.

316.    As a result of the School's discrimination, Plaintiff is entitled to back pay, front pay, reinstatement, compensatory damages, punitive damages, declaratory relief, injunctive relief, attorney's fees, and costs.

**ELEVENTH CAUSE OF ACTION**
**Title VII – "Gender Plus" Male Caregiver Discrimination and Male Caregiver Gender**
**Stereotyping Discrimination**
**(Brought by Plaintiff Against the School)**

317.    Plaintiff re-alleges and incorporates by reference all allegations in the preceding paragraphs.

318.    The School discriminated against Plaintiff by treating him less favorably than female employees and/or female caregivers, because (or in part because) of his male sex in combination with his caregiver status, and/or because of (or in part because) of the School's discriminatory stereotypical assumptions concerning male caregivers.

319.    At all times during Plaintiff's employment with the School, the School had more than fifteen employees.

320.    At all times during Plaintiff's employment with the School, he was a covered employee within the meaning of Title VII.

321.    The School's discrimination was intentional and done with malice and/or reckless indifference to the federally protected rights of Plaintiff.

322.    Plaintiff suffered damages as a result of the School's discrimination.

323.    As a result of the School's discrimination, Plaintiff is entitled to back pay, front

pay, reinstatement, compensatory damages, punitive damages, declaratory relief, injunctive

relief, attorney's fees, and costs.

## TWELFTH CAUSE OF ACTION
### Title VII – Retaliation
### (Brought by Plaintiff Against the School)

324.    Plaintiff re-alleges and incorporates by reference all allegations in the preceding

paragraphs.

325.    Plaintiff engaged in protected activity under Title VII.

326.    The School took materially adverse actions against Plaintiff because of his

protected activity of opposing and complaining about discrimination and retaliation, including

screaming at and threatening him, subjecting him to inaccurate and pretextual criticisms of his

work, threatening to terminate his employment, and ultimately terminating his employment.

327.    A reasonable employee would have found the School's retaliatory conduct

materially adverse.

328.    The School's retaliatory conduct might have dissuaded and/or was likely to

dissuade a reasonable worker from engaging in protected activity.

329.    At all times during Plaintiff's employment with the School, he was an employee

within the meaning of Title VII.

330.    At all times during Plaintiff's employment with the School, the School had more

than fifteen employees.

331.    The School's retaliation was intentional and done with malice and/or reckless

indifference to the federally protected rights of Plaintiff.

332.    Plaintiff suffered damages as a result of the School's retaliation.

333.    As a result of the School's retaliation, Plaintiff is entitled to back pay, front pay,

reinstatement, compensatory damages, punitive damages, declaratory relief, injunctive relief,

attorney's fees, and costs.

## THIRTEENTH CAUSE OF ACTION
### New York State Human Rights Law § 296(6) – Aiding, Abetting, Inciting, Compelling, or Coercing
### (Brought by Plaintiff Against Austin & Co.)

334.    Plaintiff re-alleges and incorporates by reference all allegations in the preceding

paragraphs.

335.    Plaintiff was at all times relevant a covered employee and/or a person within the

meaning of the NYSHRL.

336.    Austin & Co. aided, abetted, incited, compelled, and/or coerced the violations of

the NYSHRL by the School Defendants described herein, and/or attempted to do so.

337.    Austin & Co actually participated in the conduct giving rise to these violations of

the NYSHRL.

338.    Plaintiff suffered damages as a result of Austin & Co.'s aiding, abetting, inciting,

compelling, and/or coercion of the School Defendants' violations of the NYSHRL, and/or their

attempts to do so.

339.    Austin & Co.'s aiding, abetting, inciting, compelling, and/or coercion of the

School Defendants' violations of the NYSHRL, and/or their attempts to do so, had an impact in

New York State.

340.    As a result of Austin & Co.'s actions, Plaintiff is entitled to compensatory

damages, back pay, front pay, reinstatement, declaratory relief, and injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on his own behalf, and/or on behalf of the similarly

situated members of the FMLA Class, seeks the following relief:

A.    Certification of the FMLA Class pursuant to Rule 23(b)(2) and (c)(4) of the Federal Rules of Civil Procedure;

B.    Designation of Plaintiff as class representative and counsel of record as Class Counsel for the FMLA Class;

C.    Issuance of a class-wide declaratory judgment that, with respect to the FMLA Class, the School: (1) had a policy, practice, and/or procedure of failing to provide the written statutory FMLA notices required by 29 C.F.R. § 825.300(c) and 29 C.F.R. § 825.300(d), to its FMLA-eligible employees, male employees, and/or male caregiver employees; (2) willfully violated the written statutory FMLA notice requirements of 29 C.F.R. § 825.300(c) and 29 C.F.R. § 825.300(d); and (3) cannot meet their burden to establish a good faith and/or reasonable basis affirmative defense to the FMLA Class's entitlement to liquidated damages for violation of the notice requirements of 29 C.F.R. § 825.300(c) and 29 C.F.R. § 825.300(d);

D.    Issuance of a class-wide injunction, requiring the School to prospectively provide the FMLA statutory notices required by 29 C.F.R. § 825.300(c) and/or 29 C.F.R. § 825.300(d), to provide such required written notices to the members of the FMLA Class with respect to whom the School previously violated 29 C.F.R. § 825.300(c) and/or 29 C.F.R. § 825.300(d), to provide and any necessary corrective notices to the members of the FMLA Class, and to otherwise remediate the effects of the Schools' past

FMLA violations of the requirements of 29 C.F.R. § 825.300(c) and/or 29 C.F.R. § 825.300(d);

E.    Back pay for Plaintiff, including wages, salary, employment benefits including lost educational benefits, and/or other compensation;

F.    Compensatory damages for Plaintiff;

G.    Reinstatement for Plaintiff;

H.    Front pay for Plaintiff;

I.    Lost wages, salary, and employment benefits for Plaintiff including lost educational benefits;

J.    Liquidated damages for Plaintiff;

K.    Punitive damages for Plaintiff;

L.    Declaratory relief for Plaintiff and the FMLA Class;

M.    Injunctive relief for Plaintiff and the FMLA Class;

N.    Pre-judgment interest and post-judgment interest for Plaintiff;

O.    Reasonable attorneys' fees, expert witness fees, and other costs of the action for Plaintiff and the FMLA Class; and

P.    Such other relief as this Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by this Complaint.

Dated: June 14, 2019
New York, New York

Respectfully submitted,

By:    _____/s/ Cyrus E. Dugger_____

Cyrus E. Dugger

**THE DUGGER LAW FIRM, PLLC**
**154 Grand St**.
**New York, New York 10013**
**Tel: (646) 560-3208**

*Attorney for Plaintiff and the putative class*